IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JONATHAN METTER**<br><br>v.<br><br>**CAPELLA UNIVERSITY, LLC, et al.** | **CIVIL ACTION**<br><br>**NO. 20-6405** |

**MEMORANDUM RE MOTION TO DISMISS AMENDED COMPLAINT**

**Baylson, J.**                                                                                                                    **March 9, 2021**

## I. Introduction

As alleged, Plaintiff Jonathan Metter is a licensed therapist who needed supplemental credits to continue his practice when he moved to Pennsylvania. He discussed that need with an enrollment specialist at Capella University, who recommended three classes of four credits each. Metter enrolled in those classes but, upon their completion, learned that he had received only "quarter credits" and would need to complete additional classes before receiving his Pennsylvania license. Doing so delayed his return to practice by six months. He sued Capella for negligent and fraudulent misrepresentation, negligent nondisclosure, and unfair trade practices.

Capella[1] now moves to dismiss Metter's complaint, arguing that Metter improperly packaged contract law injuries as tort law claims. Metter argues that he asserts a tortious injury — he was injured after he justifiably relied on Capella purportedly misrepresenting the value of his course credits. The alleged misrepresentation, however, extends only to Metter's understanding of what value he would receive pursuant to his enrollment contract with Capella. Under both the

---

[1] "Capella" includes all defendants: Capella University, LLC; Capella Education Company; and Strategic Education, Inc.

1

Economic Loss and Gist of the Action doctrines, this Court must DISMISS Metter's claims, improperly asserted as tort law claims, without prejudice so that he can file a second amended complaint asserting contract law claims.

## II.  Factual Allegations

For the purposes of a motion to dismiss, the court will assume as true all factual allegations in Metter's Amended Complaint.  ECF 11.

Metter is a marriage and family therapist licensed in California.  Id. at ¶ 10.  Beginning in Summer 2018, he began preparations to move to Pennsylvania, including confirming with the Pennsylvania licensing board that he needed eleven additional credits of education to practice in the Commonwealth.  Id. at ¶ 11.  To do so, Metter contacted Capella.  Id.  Metter spoke to one or more of Capella's enrollment specialists, informing them that he needed those eleven credits to become a Licensed Marriage and Family Therapist in Pennsylvania.  Id. at ¶¶ 12, 14.

In May 2018, an enrollment specialist emailed Metter with course information for three courses in his field, each identified as being worth "4.0 credit(s)."  Id. at ¶ 15.  Metter received two more emails from Capella in July 2018, each of which reiterated the course descriptions and the value of "4.0 credit(s)" each.  Id. at ¶ 17.  Relying on these emails, Metter enrolled in those three courses, expecting a sufficient total of twelve credits upon their completion.  Id. at ¶ 21.

In December 2018, Metter learned that these twelve credits were, in fact, twelve "quarter credits," based on a Capella system, and were worth less than he expected.  Id. at ¶¶ 23, 24.  Metter did not complete his licensure requirements in the time period he had anticipated and had to enroll in additional courses to meet them.  Id. at ¶ 25.  This causes a six-month delay in his ability to begin practicing in the Commonwealth.  Id. at ¶ 26.

Metter was not informed that Capella's system used "quarter credits," the enrollment counselor did not advise him on the quarter credit system, and he was not aware that enrollment only in those three classes would result in delay in his licensure. Id. at ¶ 29. Metter claims that, had he known about the quarter credit system, he would have enrolled in more or different classes to ensure timely completion of his licensing requirements. Id.

### III. Procedural History

Metter initially sued Capella in the Pennsylvania Court of Common Pleas of Philadelphia County. ECF 1. Capella removed to the Eastern District of Pennsylvania under diversity jurisdiction. Id. Metter moved to remand, ECF 7, and Capella moved to dismiss, ECF 8.

Metter then amended his complaint, ECF 11, mooting both pending motions. In his Amended Complaint, Metter retained four of his initial claims, but he dropped his "Breach of Contract" claim. Id. The four remaining claims are (1) negligent misrepresentation, (2) fraudulent misrepresentation, (3) negligent nondisclosure, and (4) unfair trade practices.

Capella renewed its motion to dismiss, ECF 13; Metter responded in opposition, ECF 14; and Capella replied in support, ECF 15.

### IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept all factual allegations contained in a complaint as true, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that[,] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

As these claims arise through state law and are presented to this Court under diversity jurisdiction, Pennsylvania state law determines the substantive law of action. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 262 (3d Cir. 2011) ("A federal court sitting in diversity must apply state substantive law."). In the absence of authoritative guidance from the Supreme Court of Pennsylvania, the Court considers "decisions of [Pennsylvania] intermediate appellate courts, of federal courts interpreting [Pennsylvania's] law, and of other state supreme courts that have addressed the issue." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

**V.    Parties' Contentions**

    a.  Defendant's Arguments

Capella makes three chief arguments. First, the Economic Loss and Gist of the Action doctrines prohibit plaintiffs from suing for injuries that arise under a contract in the form of a tort

claim. In support, Capella claims that Metter's injuries stemmed from his belief that Capella failed to deliver the agreed-upon education (as measured in credits) pursuant to his enrollment contract. Second, Capella argues that the Court can and should examine language from its July 2018 course catalog, which disclaims responsibility for licensure requirements:

> Capella University cannot guarantee licensure, endorsement, other professional credential, or salary advancement. State licensing regulations and professional standards vary; learners are responsible for understanding and complying with the requirements of the state in which they intend to work.

ECF 13-6 at 176. The same document repeatedly identifies Capella's courses as awarding "quarter credits." Capella contends that Metter signed an acknowledgment that he read the document and accepted its purported release, such that he cannot show "justified reliance" on the enrollment specialist's emails. Third, Capella argues that Metter's Amended Complaint fails to satisfy Federal Rule of Civil Procedure Rule 9(b), which requires all allegations of fraud be pleaded with particularity.

    b. Plaintiff's Arguments

Metter responds that his claims properly arise under tort law because, while he eventually entered into a contract with Capella for his education, his initial reliance was on the pre-contract emails from the enrollment specialist that allegedly misled him as to the value of his credits. He argues that this pre-contract reliance constitutes a tort that is distinct from any contract injury.

Metter also argues that the Court cannot take judicial notice of the language from the course catalog and that doing so to assess "justified reliance" is inappropriate for a motion to dismiss, where the Court may not wade into the role of factfinder. Finally, Metter argues that he has satisfied Rule 9(b) by identifying three enrollment specialist emails that allegedly misled him regarding Capella's credit system.

**VI.    Analysis**

Metter states four claims against Capella — Counts I through III are traditional torts and Count IV is for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). Although Metter argues that his claims arise from extra-contractual representations from Capella's enrollment specialist, the fundamental nature of his claims is still grounded in contract. The enrollment specialist's comments may have affected his understanding of the credit-value he would receive through his contract, but his core complaint is that Capella failed those expectations under the enrollment contract. Pennsylvania law prohibits plaintiffs from raising contractual claims under the auspices of tort law; therefore, the Court must dismiss Metter's Amended Complaint for failure to state a claim.[2]

    a.    Applicable Doctrines under Pennsylvania Law

Capella relies on two doctrines to support its chief argument, the gist of the action doctrine and the economic loss doctrine.

        i.    Gist of the action doctrine

"The gist of the action doctrine prohibits a plaintiff from bringing a tort claim that simply reproduces a claim for breach of contract." Ohama v. Markowitz, 434 F. Supp. 3d 303, 319 (E.D. Pa. 2020) (Baylson, J.) (citing MRL Dev. I, LLC v. Whitecap Inv. Corp., 823 F.3d 195, 207 (3d Cir. 2016)). Under Pennsylvania law, the governing case regarding this doctrine is Bruno v. Erie Insurance Co., in which the Pennsylvania Supreme Court detailed "how the gist of the action doctrine should be employed to ensure that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract," 630 Pa. 79, 99 (2014), as "the mere existence of a

---

[2] For these reasons, the Court need not discuss Capella's arguments regarding the release language in the course catalog or Rule 9(b)'s particularity requirement.

6

contract between two parties does not, ipso facto, classify a claim . . . as one for breach of contract." Id. at 114.

As Bruno explained, "the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract" is "the nature of the duty alleged to have been breached." Id. at 111–12.

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Id. at 112 (citations omitted and emphasis added).

    ii.    Economic loss doctrine

The economic loss doctrine, as currently applied in Pennsylvania, prohibits plaintiffs from seeking purely economic damages for injuries that arise under contractual duties.

In the past, Pennsylvania's economic loss doctrine was solely focused on the type of damages in tort cases, providing that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." Excavation Tech., Inc. v. Columbia Gas Co. of Pa., 604 Pa. 50, 52 n.3 (2009).

In 2018's Dittman, however, the Pennsylvania Supreme Court added an additional requirement: the economic loss doctrine prohibits tort claims (1) asserting economic losses that (2) arise from contractual duties:

> Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action.

7

Dittman v. UPMC, 649 Pa. 496, 525 (2018).  In doing so, Dittman largely merged the gist of the action and economic loss doctrines to prohibit torts seeking economic damages for breaches of contractual duties.  See Sheridan v. Roberts Law Firm, No. 19-00467, 2019 WL 6726469, at *3 (E.D. Pa. Dec. 11, 2019) (Wolson, J.) ("The [Dittman] decision renders the gist of the action doctrine and the economic loss doctrine effectively coextensive under Pennsylvania law."); see also Lutheran Home for the Aged v. Forest River, Inc., No. 20-00035, 2020 WL 2950025, at *9 (W.D Pa. May 1, 2020) (comparing the doctrines and applying them concurrently).

For both doctrines, accordingly, the determinative factor for whether a party to a contract can assert tort claims against the other contracted party is whether the injury stems from a breach of contractual or non-contractual duties.

b. Capella's Relevant Duties

As alleged, Capella's representative led Metter to believe that completing the first three courses would satisfy his licensure requirements.  These communications began in May 2018, before Metter had entered a contract with Capella.  As Metter summarizes:

> [T]he crux of Plaintiff's claims is not that Capella did not fulfill its obligations but rather that Capella made material misrepresentations and nondisclosures on which Plaintiff justifiably relied, and, that as a result, Plaintiff suffered damages. The misrepresentations and nondisclosures pre-date Plaintiff's enrollment and are extraneous to any contract or contractual terms.

ECF 14 at 10.  But this is an incorrect view of Metter's claims.

As a general matter, the "relationship between a private educational institution and an enrolled student is contractual in nature."  Powell v. St. Joseph's Univ., No. 17-4438, 2018 WL 994478, at *4 (E.D. Pa. Feb. 20, 2018) (DuBois, J.) (quoting Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)); see also Reardon v. Allegheny Coll., 926 A.2d 477, 480 (Pa. Super. Ct. 2007) ("The relationship between a privately funded college and a student has traditionally been defined in this Commonwealth as strictly contractual in nature.").  The nature of the contract

is that the student pays tuition and, in exchange, the university provides an education according to its promises to the student, including those in written guidelines. Powell, 2018 WL 994478, at *4.

While the fundamental relationship is contractual, there may be non-contractual duties that a school can owe, such as a boarding school that assumes parent-like responsibilities over a minor student. Dobson v. Milton Hershey Sch., 356 F. Supp. 3d 428, 437 (M.D. Pa. 2018). This comports fully with Bruno and Dittman's discussions of contractual parties as potentially owing additional social or other non-contractual duties.

The question in this case is whether the purported breach occurred through a contractual duty to provide a certain value in education or in a social duty not to mislead others. The Amended Complaint presents a contractual duty that Metter must present under contract law. As alleged, the enrollment specialist's discussions gave Metter the impression that he would need only those three courses to satisfy his licensure obligations. Those discussions informed his interpretation of his enrollment contract with Capella. What he received through the execution of that agreement, however, were course credits of a lower value than he had believed the contract promised. Compare Werwinski v. Ford Motor Co., 286 F.3d 661, 676 (3d Cir. 2002) (the economic loss rule prohibits tort claims for pre-contract misrepresentation "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold").

Metter asserts in a footnote several social duties that he implies the enrollment specialist violated, effectively that the specialist assumed a duty to provide non-misleading information to students or potential students in his professional capacity. But the injury still arose solely through an alleged breach of contract and not some extra-contractual duty. See Slippery Rock Area Sch. Dist. v. Tremco, Inc., No. 15-1020, 2016 WL 3198122, at *14 (W.D. Pa. June 9, 2016) ("The economic loss doctrine bars negligence claims" that "seek[] to recover damages measured by the

9

difference between the value of the products it purchased as described and misrepresented by defendants and the value of the products it actually received."); Nusire v. Bristol West Ins. Co., No. 15-2014, 2015 WL 5783688, at *3 (E.D. Pa. Oct. 5, 2015) (Rufe, J.) (Tort and UTPCPL claims for misrepresentation as to value of claim under contract were barred under economic loss doctrine). The injury in this case is contractual, and Metter's claims must be presented as contract law claims.

    c.  Unfair Trade Practices Claim

Metter's Count IV, alleging unfair trade practices under Pennsylvania's UTPCPL, merits specific discussion. The Third Circuit has interpreted Pennsylvania's economic loss doctrine "to bar plaintiff's UTPCPL claim" where the "'fraud claims . . . are intertwined with contract claims' and 'the plaintiff can be made whole under contract law.'" Powell, 2018 WL 994478, at *8 (quoting Werwinski, 286 F.3d at 678, 680).

There has been longstanding "tension" between Werwinski and the Pennsylvania Superior Court's more recent but non-binding Knight decision, which holds that UTPCPL claims are not subject to the economic loss doctrine. See Okulski v. Carvana, LLC, No. 20-1328, 2020 WL 4934345, at *7 (E.D. Pa. Aug. 24, 2020) (Beetlestone, J.) (comparing Werwinski with Knight v. Springfield Hyundai, 81 A.3d 940 (Pa. Super. Ct. 2013)). But Capella argues that Werwinski is still the applicable law in this circuit, and Metter does not dispute that proposition. Moreover, until the Third Circuit or Pennsylvania Supreme Court provides further guidance to Pennsylvania's federal courts, Werwinksi continues to bind this court's decision-making. See Okulski, 2020 WL 4934345, at *7 ("following Werwinski, the economic loss doctrine bars Plaintiff's UTPCPL claim," declining to apply Knight); Powell, 2018 WL 994478, at *8–9 (applying Werwinski over Knight); Murphy v. State Farm. Mut. Auto. Ins. Co., No. 16-2922, at *5 (E.D. Pa. Sept. 15, 2016) (Baylson, J.) (same); but see Duckich v. Ikea US Retail LLC, No. 20-2182, 2021 WL 131284, at

*3 (E.D. Pa. Jan. 14, 2021) (Bartle, J.) (applying Knight over Werwinski where the relevant "duties [are] independent from any contractual obligations").  Following Werwinski, the economic loss doctrine prevents Metter from asserting his claim for economic losses under the UTPCPL.  The Court will also dismiss Metter's Count IV under the economic loss doctrine.

**VII.   Conclusion**

For the reasons set forth above, the Court GRANTS Capella's motion.  Finding that amendment of the complaint may not be futile, the Court DISMISSES Metter's Amended Complaint without prejudice and with leave to amend.  An appropriate Order follows.


O:\CIVIL 20\20-6405 Metter v Capella Univ\Memorandum Opinion re Motion to Dismiss.docx