# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JONATHAN METTER<br><br>v.<br><br>CAPELLA UNIVERSITY, LLC, et al. | CIVIL ACTION<br><br>NO. 20-6405 |

## AMENDED MEMORANDUM RE MOTION TO DISMISS AMENDED COMPLAINT

**Baylson, J.** April 20, 2021

## I. Introduction

As alleged, Plaintiff Jonathan Metter is a licensed therapist who needed supplemental credits to continue his practice when he moved to Pennsylvania. He discussed that need with an enrollment specialist at Capella University, who recommended three classes of four credits each. Metter enrolled in those classes but, upon their completion, learned that he had received only "quarter credits" and would need to complete additional classes before receiving his Pennsylvania license. Doing so delayed his return to practice by six months. He sued Capella for negligent and fraudulent misrepresentation, negligent nondisclosure, and unfair trade practices.

Capella[1] now moves to dismiss Metter's complaint, arguing that Metter improperly packaged contract law injuries as tort law claims. Metter argues that he asserts a tortious injury — he was injured after he justifiably relied on Capella purportedly misrepresenting the value of his course credits. Given updated guidance by the Third Circuit on Pennsylvania law, Metter's framing is correct: the parties' contract controlled and released Capella's obligation to ensure

---

[1] "Capella" includes all defendants: Capella University, LLC; Capella Education Company; and Strategic Education, Inc.

1

Metter received his licensure, but it did not control its duty to honestly disclose the nature of the credits he would receive in his enrollment. Because Metter's claims arise from a non-contractual duty, they are properly framed as tort claims, and the Court will DENY Capella's motion to dismiss on all counts.

## II.     Factual Allegations

For the purposes of a motion to dismiss, the court will assume as true all factual allegations in Metter's Amended Complaint. ECF 11.

Metter is a marriage and family therapist licensed in California. Id. at ¶ 10. Beginning in Summer 2018, he began preparations to move to Pennsylvania, including confirming with the Pennsylvania licensing board that he needed eleven additional credits of education to practice in the Commonwealth. Id. at ¶ 11. To do so, Metter contacted Capella. Id. Metter spoke to one or more of Capella's enrollment specialists, informing them that he needed those eleven credits to become a Licensed Marriage and Family Therapist in Pennsylvania. Id. at ¶¶ 12, 14.

In May 2018, an enrollment specialist emailed Metter with course information for three courses in his field, each identified as being worth "4.0 credit(s)." Id. at ¶ 15. Metter received two more emails from Capella in July 2018, each of which reiterated the course descriptions and the value of "4.0 credit(s)" each. Id. at ¶ 17. Relying on these emails, Metter enrolled in those three courses, expecting a sufficient total of twelve credits upon their completion. Id. at ¶ 21.

In December 2018, Metter learned that these twelve credits were, in fact, twelve "quarter credits," based on a Capella system, and were worth less than he expected. Id. at ¶¶ 23, 24. Metter did not complete his licensure requirements in the time period he had anticipated and had to enroll in additional courses to meet them. Id. at ¶ 25. This causes a six-month delay in his ability to begin practicing in the Commonwealth. Id. at ¶ 26.

2

Metter was not informed that Capella's system used "quarter credits," the enrollment counselor did not advise him on the quarter credit system, and he was not aware that enrollment only in those three classes would result in delay in his licensure. Id. at ¶ 29. Metter claims that, had he known about the quarter credit system, he would have enrolled in more or different classes to ensure timely completion of his licensing requirements. Id.

### III. Procedural History

Metter initially sued Capella in the Pennsylvania Court of Common Pleas of Philadelphia County. ECF 1. Capella removed to the Eastern District of Pennsylvania under diversity jurisdiction. Id. Metter moved to remand, ECF 7, and Capella moved to dismiss, ECF 8.

Metter then amended his complaint, ECF 11, mooting both pending motions. In his Amended Complaint, Metter retained four of his initial claims, but he dropped his "Breach of Contract" claim. Id. The four remaining claims are (1) negligent misrepresentation, (2) fraudulent misrepresentation, (3) negligent nondisclosure, and (4) unfair trade practices.

Capella renewed its motion to dismiss, ECF 13; Metter responded in opposition, ECF 14; and Capella replied in support, ECF 15. This Court initially granted Capella's motion, finding that (1) Metter's tort claims impermissibly relied on a duty that arose under contractual law as to the value of Capella's credits and (2) binding Third Circuit interpretation of the economic loss doctrine precluded Capella's unfair trade practices claim. ECF 16 (also available at 2021 WL 880133). Both holdings expressly relied on Werwinski v. Ford Motor Co., 286 F.3d 661 (3d Cir. 2002), a precedential Third Circuit opinion interpreting Pennsylvania state law. In its initial opinion, the Court noted "longstanding 'tension' between Werwinski and the Pennsylvania Superior Court's more recent but non-binding Knight decision" regarding the economic loss doctrine's applicability to statutory unfair trade practices claims. ECF 16 at 10. It concluded that, "until the Third Circuit

3

or Pennsylvania Supreme Court provides further guidance to Pennsylvania's federal courts, Werwinski continues to bind this court's decision-making." Id.

Four days before the Court issued its prior opinion — and well after the close of briefing — the Third Circuit had issued a new precedential opinion addressing the conflict between Werwinski and Knight and, as a result, abrogating Werwinski. Earl v. NVR, Inc., 990 F.3d 310 (3d Cir. 2021). In light of the Earl opinion, this Court vacated its prior opinion and ordered the parties to submit supplemental briefs on the ruling. ECF 18. The parties have since done so, ECF 19, 20, and the Court will now re-address Metter's claims under the new legal landscape.

## IV.   **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Although a court must accept all factual allegations contained in a complaint as true, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that[,] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."). Accordingly, to survive a

motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

As these claims arise through state law and are presented to this Court under diversity jurisdiction, Pennsylvania state law determines the substantive law of action. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 262 (3d Cir. 2011) ("A federal court sitting in diversity must apply state substantive law."). In the absence of authoritative guidance from the Supreme Court of Pennsylvania, the Court considers "decisions of [Pennsylvania] intermediate appellate courts, of federal courts interpreting [Pennsylvania's] law, and of other state supreme courts that have addressed the issue." Spence v. ESAB Grp., Inc., 623 F.3d 212, 216 (3d Cir. 2010).

## V. Parties' Contentions

### a. Defendant's Arguments

In its initial motion to dismiss, Capella made three chief arguments. First, in reliance on Werwinski, Capella contended that the economic loss and gist of the action doctrines prohibit plaintiffs from suing for injuries that arise under a contract in the form of a tort claim. In support, Capella claimed that Metter's injuries stemmed from his belief that Capella failed to deliver the credits he needed for licensure, a responsibility that Capella disclaimed in its course catalogue, which Metter accepted during in his enrollment.

> Capella University cannot guarantee licensure, endorsement, other professional credential, or salary advancement. State licensing regulations and professional standards vary; learners are responsible for understanding and complying with the requirements of the state in which they intend to work.

5

ECF 13-6 at 176.  <u>Second</u>, Capella argued that the Court can and should examine language from the same course catalog, which repeatedly identifies Capella's courses as awarding "quarter credits."  Capella contended that Metter signed an acknowledgment that he read the document, such that he cannot show "justified reliance" on the enrollment specialist's emails.  <u>Third</u>, Capella argued that Metter's Amended Complaint fails to satisfy Federal Rule of Civil Procedure Rule 9(b), which requires all allegations of fraud be pleaded with particularity.

Following the Third Circuit's decision in <u>Earl</u>, the Court ordered supplemental briefing from the parties.  Largely reiterating its prior arguments, Capella interpreted <u>Earl</u> as leaving the gist of the action doctrine unchanged under Pennsylvania law, and, therefore, the gist of the action would still bar all of Metter's claims.  As explained by Capella, the <u>Earl</u> court found the gist of the action doctrine inapplicable "because the claim was based on the marketing and statements made by sales agents after the sale rather than the contract itself."  ECF 20 at 3.  Capella conceded, however, that <u>Earl</u> rendered the economic loss doctrine inapplicable to Metter's UTPCPL claims.

    b.  <u>Plaintiff's Arguments</u>

Prior to <u>Earl</u>, Metter responded that his claims properly arise under tort law because, while he eventually entered into a contract with Capella for his education, he relied on the pre-contract emails from the enrollment specialist that allegedly misled him as to the value of his credits.  He argued that this pre-contract communication gave rise to a duty of honesty outside of the contract.

Metter also argued that the Court cannot take judicial notice of the language from the course catalog and that doing so to assess justifiable reliance would be inappropriate for a motion to dismiss, where the Court may not wade into the role of factfinder.  Finally, Metter argued that he has satisfied Rule 9(b) by identifying the three enrollment specialist emails that allegedly misled him regarding Capella's credit system.

6

In its post-Earl briefing, Metter reiterated that neither the gist of the action doctrine nor the economic loss doctrine bars his claims. Metter analogized Earl's distinctions between contract- and tort-based duties to his own claims: "as was the case in Earl, the crux of Plaintiff's claims is not that Capella did not fulfill its obligations in carrying out a contractual agreement but rather that Capella made material misrepresentations and nondisclosures that induced Plaintiff to enter into a contract and on which misrepresentations and nondisclosures Plaintiff justifiably relied." ECF 19 at 3–4. Metter contended that this same distinction made both the economic loss doctrine and gist of the action doctrine inapplicable to his own claims. Metter also indicated that Earl rejected Werwinski's holding that the economic loss doctrine could bar any UTPCPL claims, regardless of the underlying duty asserted.

## VI. Analysis

Metter states four claims against Capella — Counts I through III are traditional torts and Count IV is for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). The Third Circuit's guidance in Earl, 990 F.3d 310 (3d Cir. 2021), provides determinative new insight into both sets of claims: where a plaintiff's tort claim "is not primarily premised upon the terms of the contract . . . but on the marketing and representations that induced her to enter into the contract in the first instance," the claim is "collateral" to any contractual duties. Id. at 315–16. Because Metter's claims rest on pre-contractual representations regarding his course credits, which allegedly led him to believe his planned enrollment would satisfy his licensing obligations, the relevant duty here is not contractual and neither the gist of the action doctrine nor the economic loss doctrine bar his claims.

Capella's additional arguments that Metter could not have justifiably relied on the enrollment specialist's emails and that the complaint did not satisfy Rule 9(b)'s requirement for

pleading fraud with particularity also must fail. As such the Court will DENY Capella's motion to dismiss.

    a. <u>Applicable Doctrines under Pennsylvania Law</u>

Capella relies on two doctrines to support its chief argument, the gist of the action doctrine and the economic loss doctrine.

        i. <u>Gist of the action doctrine</u>

Under the gist of the action doctrine, "an alleged tort claim against a party to a contract . . . is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations." <u>Earl</u>, 990 F.3d at 314–15 (quoting <u>Dixon v. Nw. Mut.</u>, 146 A.3d 780, 788 (Pa. Super. 2016)). "The critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract" is "the nature of the duty alleged to have been breached." <u>Bruno v. Erie Insurance Co.</u>, 630 Pa. 79, 111–12 (2014). If the "duty breached is one created by the terms of the contract, then the claim is to be viewed as one for breach of contract." <u>Id.</u> at 112 (cleaned up). If, however, the duty is one "imposed by the law of torts, and, hence, exists regardless of the contract, then it must be regarded as a tort." <u>Id.</u> (cleaned up).

        ii. <u>Economic loss doctrine</u>

Similarly, the economic loss doctrine prohibits (1) common law claims (2) that assert economic losses (3) arising solely from contractual duties:

> Specifically, if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action.

Dittman v. UPMC, 649 Pa. 496, 525 (2018). The doctrine does not apply, however, "when a statute provides a private cause of action for economic losses," Earl, 990 F.3d at 313 (cleaned up), such as the UTPCPL. Id. at 313–14.

b. Capella's Relevant Duties

As alleged, Capella's enrollment specialist led Metter to believe that completing the first three courses would satisfy his licensure requirements. These communications began in May 2018, before Metter had entered a contract with Capella. As Metter summarizes:

> [T]he crux of Plaintiff's claims is not that Capella did not fulfill its obligations but rather that Capella made material misrepresentations and nondisclosures on which Plaintiff justifiably relied, and, that as a result, Plaintiff suffered damages. The misrepresentations and nondisclosures pre-date Plaintiff's enrollment and are extraneous to any contract or contractual terms.

ECF 14 at 10. The question in this case is whether Capella's purported breach occurred through a contractual duty to provide a certain value in education or in a social duty not to mislead others.

As a general matter, the "relationship between a private educational institution and an enrolled student is contractual in nature." Powell v. St. Joseph's Univ., No. 17-4438, 2018 WL 994478, at *4 (E.D. Pa. Feb. 20, 2018) (DuBois, J.) (quoting Swartley v. Hoffner, 734 A.2d 915, 919 (Pa. Super. Ct. 1999)). The nature of the contract is that the student pays tuition and, in exchange, the university provides an education according to its promises to the student, including those in written guidelines like a course catalogue. Id.

While the fundamental relationship is contractual, a school can nonetheless owe typical social duties outside that contract. See, e.g., Dobson v. Milton Hershey Sch., 356 F. Supp. 3d 428, 437 (M.D. Pa. 2018). This comports fully with Bruno and Dittman's discussions of contractual parties as potentially owing additional social or other non-contractual duties.

Earl provides a key insight into this distinction. In Earl, the plaintiff bought a house from the defendant, NVR, a construction company that built the house. 990 F.3d at 311. NVR promised

9

various features, including assurances outside of the contract about the house's quality, amenities, and coverage for future repairs. Id. at 311–12.[2] At least some of these representations were made "prior to the formation of the contract," and they did not relate to the specific assurances of the contract. Id. at 315. When the home was not completed as promised, the court concluded that the breached duty was "collateral" to the contract, id. at 316, because it arose from social duty of honesty in making marketing representations rather than anything addressed in the explicit terms of the contract. Id. at 315–16.

So what duty was allegedly breached here? Capella argues that the relevant duty was Capella's duty to assure its students met their licensing requirements, which it expressly addressed (and released) in its contract with Metter. According to the plaintiff, Metter knew his licensure requirements (eleven full credits) and relied on the honesty of Capella's employee (representing the course-load as twelve full credits) to believe he would meet them. Metter contends that the breached duty was therefore a non-contractual duty of honesty, as the enrollment specialist allegedly misrepresented the value of the credits he would receive.

In light of Earl, the Court agrees with Metter's characterization. Like the builders in Earl, (1) Capella allegedly breached its non-contractual duty of honesty when representing to Metter what he would receive through their dealings and (2) the subject of those representations was not an express term of the contract. While Metter released Capella from any direct liability for his failure to receive his licensure, his contract did not release Capella from telling him the honest

---

[2] In its vacated opinion, this Court previously disagreed with Metter's characterization of the relevant duties, relying on Werwinski. Werwinski held that the economic loss rule prohibits tort claims for pre-contract misrepresentation "where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold." 286 F.3d at 676. But Earl set aside much of Werwinski, and, in the process, provided clarifying precedent on the role of pre-contractual representations for both the gist of the action and economic loss doctrines.

attributes of what he would receive through their relationship. Compare Bessemer Sys. Fed. Cred. Union v. Fiserv Sols., LLC, 472 F. Supp. 3d 142, 161 (W.D. Pa. 2020) (duty that arose under "an express provision" "is contractual in nature"); with id. at 165 ("Fiserv's duty to honestly convey information . . . does not, necessarily, arise from the Master Agreement.").

Metter's claims therefore do not sound in contract and neither the gist of the action doctrine nor the economic loss doctrine bar his claims, whether arising from common law tort or through the UTPCPL.[3]

## VII. Justifiable Reliance

Capella also argues that, even if its enrollment specialist represented that Metter would receive twelve full credits, he could not justifiably rely on that representation because he signed an agreement that he read and understood the court catalogue, which repeatedly refers to Capella's quarter credit system. But "justifiable reliance is typically a question of fact for the fact-finder to decide," even where there was arguably "obvious" information to contradict the plaintiff's interpretation. Toy v. Metro. Life Ins. Co., 593 Pa. 20, 55 (2007).[4] This argument is not appropriate for the motion to dismiss stage.

## VIII. Particularity

Finally, Capella argues in a footnote that Metter's complaint failed to satisfy the heightened pleading requirements of Rule 9(b) when discussing the alleged misrepresentations. But the

---

[3] While the Court previously held that Metter's UTPCPL claims were barred by the economic loss doctrine under Werwinski, the Third Circuit has since clarified that "the economic loss doctrine no longer may serve as a bar to UTPCPL claims." Earl, 990 F.3d at 314. The gist of the action doctrine analysis is the same for the UTPCPL claim as for the tort law claims, id. at 316, and therefore also does not bar the UTPCPL claim.

[4] Capella's argument to the contrary relies on caselaw where the contract includes an integration clause that limits contract interpretation to the express terms of the contract. See id. at 52–53 (distinguishing Yocca v. Pittsburgh Steelers Sports, Inc., 578 Pa. 479 (2004)). Capella has not indicated such a clause here.

11

complaint describes three separate emails from Capella's enrollment specialist, identifying each by date. These allegations satisfy Rule 9(b).

## IX. Conclusion

For the reasons set forth above, the Court DENIES Capella's motion to dismiss. An appropriate Order follows.

O:\CIVIL 20\20-6405 Metter v Capella Univ\Amended Memorandum Opinion re Motion to Dismiss.docx